# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEKOUFEH ALMASI, et al.,<br><br>                     Plaintiffs,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as the Secretary of the Department of State, et al.,<br><br>                     Defendants. | Case No.:  3:25-cv-02002-RBM-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**[Doc. 6]** |

Plaintiffs are Canadian-Iranian nationals who initiated this action to seek judicial intervention in the processing of their immigrant visa applications pursuant to the Mandamus Act and the Administrative Procedure Act ("APA").  Pending before the Court is Defendants' Motion to Dismiss.  (Doc. 6.)  Defendants move to "drop plaintiffs and/or sever claims" and to dismiss the Complaint for improper venue, lack of subject matter jurisdiction, and failure to state a claim.  (*Id.* at 8.)[1]  Plaintiffs filed an Opposition to Defendants' Motion to Dismiss ("Opposition") (Doc. 7), and Defendants filed a Reply in Support of Defendants' Motion to Dismiss ("Reply") (Doc. 8).

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  Having reviewed the above filings, and for the reasons below, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

---

[1]  The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for other filings unless otherwise noted.

3:25-cv-02002-RBM-AHG

# I. BACKGROUND[2]

## A. Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA") authorizes the issuance of three categories of visas: family-based, employment-based, and diversity. 8 U.S.C. § 1151(a). Relevant here are employment-based visa applications, the processing of which generally proceeds in the following manner:

> First, the applicant submits Form I-140, Immigrant Petition for Alien Worker, to the United States Citizenship and Immigration Services ("USCIS"). *See* [8 U.S.C.] §§ 1153(b), 1154; 8 C.F.R. § 204.5. If approved, USCIS sends the petition to the National Visa Center ("NVC"), which contacts the noncitizen beneficiaries to collect all necessary documents and fees. 8 U.S.C. § 1202; 8 C.F.R. §§ 204.1(a), 204.2(d). Once the NVC deems the petition "documentarily complete," and subject to the availability at that time, the NVC schedules the applicant for an interview with a consular officer at a United States embassy or consulate. *See* 8 U.S.C. §§ 1201(a)(1), 1202; 22 C.F.R. §§ 42.62, 42.63, 42.65. At the interview, the consular office directs the applicant to submit either a Form DS-230 or Form DS-260. *See* 22 C.F.R. § 42.63(a). Following the interview, the consular officer must either issue the visa or refuse it under applicable law. 8 U.S.C. §§ 1201(g), 1361; 22 C.F.R. §§ 42.71, 42.81(a). The consular officer "may require the submission of additional information or question the alien on any relevant matter whenever the officer believes that the information provided . . . is inadequate to determine the alien's eligibility to receive an immigrant visa." 22 C.F.R. § 42.63(c).

*Mahonak v. Rubio*, Case No. 8:24-cv-01443-FWS-DFM, 2025 WL 449044, at *1 (C.D. Cal. Feb. 10, 2025). Additionally, the State Department's visa security vetting process is centralized through the Office of Screening, Analysis, and Coordination ("OSAC"). (Doc. 1 ("Compl.") ¶ 135 (citing Doc. 1-18 [Decl. of Carson Wu ("Wu Decl.")] ¶¶ 1–27).)[3]

---

[2] The factual summary in this section reflects Plaintiff's allegations, not conclusions of fact or law by this Court. Well-pled factual allegations are accepted as true for purposes of the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] The Court may properly consider the Wu Declaration here. "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained

3:25-cv-02002-RBM-AHG

"All visa applicant data is screened against the Department's Consular Lookout and Support System ('CLASS'), an online database" containing about 36 million records, "populated, in part, through an export of the Terrorist Screening Database and the federal terrorism watchlist." (Wu Decl. ¶ 11.) OSAC provides consular offices with Security Advisory Opinions ("SAO"s) regarding visa ineligibility and inadmissibility. (*Id.*) Visa applicants are also screened against the Consular Consolidated Database, another online database containing more than 181 million records that serves "as a secondary check for derogatory information regarding visa applicants" and "flag[s] prior visa applications, refusals, and issuances." (*Id.* ¶ 12.) Additionally, in 2013, the State Department launched the Kingfisher Expansion counterterrorism visa vetting system, a classified technology that provides further screening of visa applicants. (*Id.* ¶ 14.) "If derogatory information exists about an applicant, the consular officer receives a 'red-light' response to one of the automated lookout systems." (*Id.*) "When a consular officer encounters a 'red-light,' the consular officer is required to take prescribed steps necessary to assess properly whether the applicant has incurred a ground of visa ineligibility," including, in certain cases, "refus[ing] the application under INA section 212(a)(3) and [requesting an] SAO from [OSAC], which initiates an interagency security review." (*Id.* ¶ 15.)

According to Plaintiffs, the "visa security vetting process . . . is plagued by extraordinary backlogs and systemic delays." (Compl. ¶ 135.) For example, at the time of the Complaint, OSAC had 37 analysts handling about 61,000 pending SAO requests. (Wu Decl. ¶¶ 22–25.) And "no visa may be issued while an SAO is pending, and consular officers cannot proceed until interagency clearance is finalized." (Compl. ¶ 136.)

in the complaint. . . . These documents are part of the complaint and may be considered" on a motion to dismiss. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987), *cert. denied*, 484 U.S. 944 (1987).

3:25-cv-02002-RBM-AHG

**B.      Factual Background**

All 25 Plaintiffs, representing eight different families, are Canadian and Iranian citizens who have applied for immigrant visas.  (Compl. ¶ 2.)   The eight primary applicants—engineers, scientists, and researchers in the fields of chemical engineering, polymer science, desalination technology, and clean energy—have received approved I-140 petitions for immigrant workers in the "EB-2 NIW" or "EB-1" categories.  (*Id.* ¶ 3; Doc. 7 at 8–9.)  These categories are for those "whose work is in the National Interest of the United States" and for "Aliens of Extraordinary Ability."  (Compl. ¶ 3.)  The seventeen derivative applicants are spouses and children of the primary applicants.  (*Id.* ¶¶ 26–50.)

All Plaintiffs applied for immigrant visas using Form DS-260, Online Immigrant Visa and Alien Registration Application.  (*Id.* ¶ 4.)  All of their applications were deemed "documentarily complete" by the NVC between December 20, 2022 and December 14, 2023.  (*Id.*)  All Plaintiffs were interviewed between June 25, 2024 and January 31, 2025 at the Consulate General in Montreal, Canada.  (*Id.* ¶ 5; *see id.* ¶¶ 80, 83, 86, 89, 92, 95, 98, 101, 105.)  As of April 10, 2025, only Plaintiff Shekoufeh Almasi ("Almasi") has had her visa application fully adjudicated; she is now a legal permanent resident of the United States who lives and works in San Diego.  (*Id.* ¶ 5.)  All other applications "remain[ ] refused under [Immigration and Nationality Act ("INA")] § 221(g)"[4] pending further internal processing or security screening.  (Doc. 6-1, Decl. of Samuel W. McDonald ("McDonald Decl.") ¶¶ 4–11.)

---

[4] The relevant text of INA § 221(g) provides: "No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law."  *See* 8 U.S.C. § 1201(g).

## II.     LEGAL STANDARDS

**A.     Joinder**

Federal Rule of Civil Procedure ("Rule") 20(a) "permits the joinder of plaintiffs in one action if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (citations omitted).  A district court has discretion regarding joinder under Rule 20, *see Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998), and the rules of permissive joinder are to be "construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (citation omitted).  "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1350 (citations omitted).

**B.     Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and, as such, have an obligation to dismiss claims for which they lack subject matter jurisdiction.  *See Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983).  "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008).

**C.     Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "A motion to dismiss under [Rule] 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (internal citation omitted).  An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual

3:25-cv-02002-RBM-AHG

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### III.   DISCUSSION

Plaintiffs allege that Defendants have unreasonably delayed adjudicating their immigrant visa applications and ask the Court to compel adjudication under (1) the Mandamus Act, 28 U.S.C. § 1361; (2) APA § 706(1); and (3) APA § 706(2).  (Compl. ¶¶ 140–157.)  Defendants argue that: (1) Plaintiffs unrelated to Almasi should be dropped or their claims should be severed and (2) then dismissed for improper venue; and the entire action should be dismissed for (3) lack of subject matter jurisdiction and (4) failure to state a claim.  (Doc. 6 at 14–27; Doc. 8 at 1–10.)

### A.   Joinder

Defendants argue that the Court "should drop the twenty-three plaintiffs, other than Plaintiffs Almasi and her husband . . . , for misjoinder" because "[v]isa adjudications . . . are individualized processes" and because "Plaintiffs are eight unrelated family groups who were interviewed for their visa applications on different dates between June 2024 and January 2025, presumably by different consular officers, with different members of the family groups being subject to additional security screening." (Doc. 6 at 14–15.)  Plaintiffs argue that they "are properly joined under Rule 20(a) because each of their injuries stems from the same governmental workflow: Defendants' uniform use of DS-5535 automated triggers, Security Advisory Opinion ('SAO') processing, and repeated issuance of non-final § 221(g) refusals."  (Doc. 7 at 13.)  The Court finds that Plaintiffs are not properly joined because they do not meet the requirements of Rule 20(a).

At the outset, the Court agrees with Defendants that the Complaint "does not mention DS-5535s" and that Plaintiffs cannot rely on an argument asserted for the first time in their opposition to the Motion to Dismiss.  (Doc. 8 at 3.)  Separately, Plaintiffs

allege that the delay in adjudication of their applications is caused by "insufficient staffing and backlogs within the [SAO] system," the use of "automated lookout systems," and the "repeated issuance of [§] 221(g) non-final notices." (Doc. 7 at 12; Compl. ¶¶ 75, 106; Wu Decl. ¶¶ 10–11, 14–15.) The Court finds that these allegations are insufficient to show that Plaintiffs' claims arise from the "same transaction, occurrence, or series of transactions" and share "common questions of law or fact." *Coughlin*, 130 F.3d at 1350.

In *Coughlin*, the Ninth Circuit affirmed the district court's order granting the defendants' motion to sever. The court found that the plaintiffs failed at the first step of the permissive joinder test, reasoning that "the mere allegation of general delay is not enough to create a common transaction or occurrence," as "[e]ach Plaintiff has waited a different length of time, suffering a different duration of alleged delay." *Id.* "[M]ost importantly, there may be numerous reasons for the alleged delay." *Id.* The court also found that the plaintiffs failed at the second step, reasoning that "each applicant or petitioner presents a different factual situation" and "each must receive personalized attention by the INS and, ultimately, by the Court." *Id.* at 1350–51. "[T]rial efficiency will not be promoted by allowing all Plaintiffs to bring a single case. Each claim raises potentially different issues, and must be viewed in a separate and individual light by the Court." *Id.* at 1351.

Although the differences in Plaintiffs' applications and factual circumstances are not as egregious as they were in *Coughlin*, there are significant differences all the same. Plaintiffs are eight unrelated families, representing eight primary applicants with approved I-140 petitions in the EB-2 NIW or EB-1 categories, and their seventeen spouse and child derivative applicants. (Compl. ¶¶ 3, 26–50.) Each of their claims "involve different application details, application dates, and alleged delays." *Badvipour v. Blinken*, Case No. 8:24-cv-01458-DOC-KES, 2025 WL 855753, at *6 (C.D. Cal. Jan. 7, 2025). Indeed, the delays in adjudication since each family's consulate interview range from six to thirteen months. (*See* Compl. ¶¶ 26–50.) And even if each Plaintiff's application was delayed by the use of automated lookout systems, the potential derogatory information or "red light"

response generated by those lookout systems would necessarily be different for each Plaintiff.  (*See* Wu Decl. ¶¶ 11–26.)  In other words, as the *Coughlin* court recognized, "there may be numerous reasons for the alleged delay" unique to each Plaintiff such that "even if Plaintiffs' cases were not severed, the Court would still have to give each claim individualized attention."  130 F.3d at 1350.  Accordingly, the Court finds that joinder is inappropriate here.

In the event of misjoinder, the Court "may at any time, on just terms, add or drop a party," Fed. R. Civ. P. 21, "so long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1350 (citations omitted); *see also Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 975 (9th Cir. 2015) ("[D]istrict courts who dismiss rather than sever must conduct a prejudice analysis" and consider whether dismissal would result in the "loss of otherwise timely claims if new suits are blocked by statutes of limitations.").  "In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs 'against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint.'" *Coughlin*, 130 F.3d at 1350 (citation omitted).

The Court finds no such prejudice here.  Plaintiffs argue that they:

> are unable to relocate to the United States as a family, enroll their children in school, or begin the employment or research positions for which they are already qualified.  The delays also derail time-sensitive professional and academic opportunities.  The principal applicants cannot commence U.S. research or employment directly tied to their approved immigrant petitions, leaving their careers and advancement on hold while DOS fails to complete adjudication.

(Doc. 7 at 9–10 (citations omitted).)

They do not argue, however, that their claims, if refiled, would be barred.  Additionally, "[t]here is no suggestion in the record . . . that [the State Department] will cease processing plaintiffs' respective applications until [the State Department] is served with a new complaint." *Gonzalez v. Dir. of USCIS*, Case No. 24-cv-07948-MMC, 2025 WL 1237552, at *3 (N.D. Cal. Apr. 29, 2025).  Accordingly, the Court finds it appropriate

8

to **DISMISS without prejudice** the 23 Plaintiffs unrelated to Almasi.[5]  For the rest of the analysis below, the Court uses "Plaintiffs" to refer to Almasi and her husband, Seyednaser Nourashrafeddin.

**B.    Rule 12(b)(1)**

Defendants argue that the Court lacks jurisdiction over Plaintiffs' claims because (1) "mandamus is an extraordinary remedy that is available only where, among other things, the defendant owes a clear, nondiscretionary duty," not found here because "there are no statutory or regulatory provisions that mandate consular processing within a certain amount of time;" and (2) the State Department has not failed to take a discrete agency action, as evidenced by its issuance of § 221(g) refusals.  (Doc. 6 at 16–21; Doc. 8 at 4–5.)  Plaintiffs argue that the State Department has a mandatory, non-discretionary duty to adjudicate visas within a reasonable time, and that § 221(g) refusals "are not final adjudications but temporary holds pending further internal processing."  (Doc. 7 at 19–22.)  The Court agrees with Plaintiffs.

The Court notes that it will analyze Plaintiffs' Mandamus Act and APA claims together under the APA.  *See Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) ("Because mandamus relief and relief under the APA are 'in essence' the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only.") (quoting *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997)).  Additionally, "[a] challenge to an agency's alleged failure to act," such as Plaintiffs assert here, "is more appropriately channeled through Section 706(1)" than Section 706(2).  *Al Otro Lado v. Nielsen*, 327 F. Supp. 3d 1284, 1309 (S.D. Cal. 2018).

---

[5]  Defendants' sole argument regarding venue is that if the Plaintiffs unrelated to Almasi are dropped "or their claims severed, venue in this District is improper for all family groups except" Almasi's.  (Doc. 6 at 15–16.)  Because the Court finds it appropriate to dismiss the 23 unrelated, misjoined Plaintiffs, it need not reach this venue argument.

9

3:25-cv-02002-RBM-AHG

### 1. Defendants have a mandatory duty under the INA.

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). "A court can compel agency action under this section only if there is a 'specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah. Wilderness Alliance*, 542 U.S. 55, 63–64 (2004)). The INA requires that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Thus, the State Department is "required by law to act on visa applications," and Plaintiffs have demonstrated a clear, nondiscretionary duty. *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997); *see also Li v. Blinken*, Case No. 8:23-cv-02142-DOC-KES, 2024 WL 2107341, at *2 (C.D. Cal. Apr. 4, 2024) ("Defendants argue that the pace of adjudicating a visa application is entirely discretionary. . . . This argument fails.").

### 2. Section 221(g) refusals are not "final."

A "purported 'refusal' of a visa application 'is not a refusal within the meaning of 22 C.F.R. § 42.81' if 'it is not a final decision.'" *Shahijani v. Laitinen*, Case No. 2:23-cv-03967-RGK-MRW, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023) (quoting *Patel*, 134 F.3d at 932). "Thus, merely characterizing an application as 'refused' does not necessarily mean it is finally adjudicated." *Momeni v. Blinken*, Case No. 2:24-cv-04879-ODW (AGRx), 2024 WL 5112234, at *4; *see also Al-Gharawy v. United States Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022) ("Although the State Department may 'choose[ ] to characterize a section 221(g) notification as a 'refusal,' . . . that magic word is not a get-out-of-review-free card.") (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020)). Instead, courts must consider "what is *actually* happening" in the case. *Aminzadeh v. Blinken*, No. 2:24-cv-02025-DSF-MRW, 2024 WL 3811153, at *4 (C.D.

Cal. Aug. 9, 2024) (citations and internal quotation marks omitted).

In this case, Nourashrafeddin has not received a final decision on his visa application. Instead, his application remains refused under § 221(g) *pending further internal processing or security screening*. (Compl. ¶ 12; McDonald Decl. ¶¶ 4–11.) Plaintiffs have contacted the United States Consulate General in Montreal "[a]t regular intervals while their applications have been pending" and been told each time that their applications are in "administrative processing." (Compl. ¶¶ 105, 114.) As many courts have found, "refusal for administrative processing is not a final decision and therefore does not discharge the agency's obligation to adjudicate visa applications." *Aminzadeh*, 2024 WL 3811153, at *4 (collecting cases); *see also Morales v. Mayorkas*, Case No.: 23-cv-1758-BEN (MSB), 2024 WL 2884554, at *2 (S.D. Cal. June 7, 2024) (finding that "an initial consular refusal setting the stage for additional administrative processing" is "not a final decision"); *Li*, 2024 WL 2107341, at *3 ("In short, there appear[ ] to be additional steps needed for Plaintiff to receive a final determination on his application, meaning Defendants have not yet discharged [their] duty to act on Plaintiff's application."). Under these circumstances, Plaintiffs have shown that Defendants have not discharged their mandatory duties to adjudicate Nourashrafeddin's visa application. Accordingly, the Court rejects Defendants' Rule 12(b)(1) argument.

**C.      Rule 12(b)(6)**

Finally, Defendants argue that Plaintiffs fail to plausibly allege an unreasonable delay claim. (Doc. 6 at 22–27.) "To determine whether an agency's delay is unreasonable, courts in the Ninth Circuit apply the six-factor test articulated in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), commonly referred to as the '*TRAC*' test." *Tamjidi v. Blinken*, Case No. 8:24-cv-00403 HDV JDE, 2024 WL 4328813, at *5 (C.D. Cal. Aug. 27, 2024); *Vaz*, 33 F.4th at 1137 (applying *TRAC* factors). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) (citation omitted). Therefore, although the Parties

have briefed the TRAC factors, the Court finds it premature to conduct the TRAC analysis now. *Accord Akbar v. Blinken*, Case No.: 23cv1054-LL-BLM, 2023 WL 8722119, at *4 (S.D. Cal. Dec. 18, 2023) (collecting cases declining to conduct TRAC analysis on a motion to dismiss).

As such, Plaintiffs need only allege a legally cognizable theory and offer non-conclusory factual allegations sufficient to support that theory. *Iqbal*, 556 U.S. at 681. Plaintiffs have done so here. As discussed above, they allege that the use of automated lookout systems and the systematic issuance of non-final § 221(g) refusals is responsible for the State Department's unreasonable delay in adjudicating their visa applications. Therefore, the Court rejects Defendants' Rule 12(b)(6) argument.

### IV.    CONCLUSION

Based on the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the Motion to Dismiss (Doc. 6). The Court **GRANTS** the Motion to Dismiss for improper joinder and **DISMISSES without prejudice** all Plaintiffs other than Almasi and Nourashrafeddin.

The Court **DENIES** the Motion to Dismiss as it relates to Almasi and Nourashrafeddin. Defendants **SHALL FILE** their Answer to Almasi and Nourashrafeddin's claims on or before **May 15, 2026**.

**IT IS SO ORDERED.**

Dated: April 24, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

12

3:25-cv-02002-RBM-AHG